BARRET S. LITT (No. 45527)
DAVID S. McLANE (No. 124952)
E-Mail: dmclane@kmbllaw.com
KAYE, Mclane, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Attorneys for Plaintiff
ANTHONY OLIVER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY OLIVER,<br><br>        Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, a public entity; JIM MCDONNELL, in his Individual and Official capacity; KEVIN GORAN, in his Individual and Official capacity; JEFF ADAMS, in his Individual and Official capacity; ISAIAS MARIN, JR., in his Individual and Official capacity; DONALD MANUMALEUNA , in his Individual and Official capacity; MICHAEL KASSABIAN, in his Individual and Official capacity, NANCY ALEMAN, in her individual and official capacity, GERALD DENSON, in his individual and official capacity; STEVEN KALE, in his individual and official capacity, and R. ALVAREZ, in his individual and official capacity, and DOES 1-10, inclusive.<br><br>        Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES:**<br>  1) **Violation of Civil Rights, 42 U.S.C. § 1983;**<br>  2) **Violation of Civil Rights, 42 U.S.C. § 1983, Failure to Properly Screen and Hire;**<br>  3) **Violation of Civil Rights, 42 U.S.C. § 1983, Supervisorial Liability**<br>  4) **Violation of Civil Rights, 42 U.S.C. § 1983, Deliberate Indifference to medical needs;**<br>  5) **Violation of ADA;**<br>  6) **Violation of CCP 52.1, Bane Act;**<br>  7) **Assault and Battery;**<br>  8) **Intentional Infliction of Emotional Distress;**<br>  9) ***Monell* Violation, 42 U.S.C. § 1983**<br><br>**[DEMAND FOR JURY TRIAL]** |

**JURISDICTION**

1.      The Court has jurisdiction over the federal law claims pursuant to Title 28 U.S.C. §§1331 and 1343. The Court also has supplemental jurisdiction over the state law claims and over all Defendants. Plaintiff brings this action pursuant to Title 42 U.S.C. §§1983, 1988 and the state law claims for relief are within the supplemental jurisdiction of the Court, pursuant to Title 28 U.S.C. § 1367.

**VENUE**

2.      Venue is proper within the Western Division of the Central District of California as Plaintiff's claims herein alleged arise out of incidents involving deputies of the Los Angeles County Sheriff's Department, and the events giving rise to the claims occurred while Plaintiff was in the custody of the Los Angeles County Sheriff's Department, in the Metropolitan Court located in downtown Los Angeles.

**PARTIES**

3.      Plaintiff Anthony Oliver, (hereafter "Mr. Oliver or Plaintiff") was, at all times relevant hereto, a resident of the County of Los Angeles, and an adult competent to bring this suit in this Court.

4.      Defendant County of Los Angeles (hereafter "County") is a public entity organized and existing under the laws of the State of California. Defendant operates the Los Angeles County Sheriff's Department ("hereafter "LACSD") and is a public entity within the meaning of California law, and is a County agency. These Defendants are sued in their own right for a County and/or LACSD policy, practice or custom that caused Plaintiffs' injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. §1983.

5.      All individual defendants are named based on their personal involvement and/or supervisorial liability for their role in the constitutional deprivations alleged herein, including but not limited to their establishment, setting

in motion, failing to terminate, ratification, implementation, institution, and/or execution of the discriminatory actions, policies, practices and customs against LGBT inmates in the Superior Court lockups and/or failure to adequately train or supervise LASD personnel who have engaged in the conduct alleged herein.

6.     Defendant Jim McDonnell (hereafter "McDonnell") is the Sheriff of Los Angeles County, and is the policy maker for the LACSD. He is sued in his official and individual capacity.  At all times relevant, as a County official, Defendant McDonnell acted under the color of law.

7.     Defendant Kevin Goran (hereafter "Goran") is the Commander in charge of the Court Services Bureau which oversees all Superior Court lock-up Facilities County wide. Goran is sued in his individual capacity. At all times relevant, as a County official, Defendant Goran acted under the color of law.

8.     Defendant Jeff Adams (hereafter "Adams") is the Watch Commander in charge of the Court Services Bureau Metro Court. He is the supervisor to the Defendants. Adams is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Adams acted under the color of law.

9.      Defendant Isaias Marin, Jr. (hereafter "Marin") is a Deputy Sheriff holding the rank of corporal. He is currently assigned to the Los Angeles County Metropolitan Court as a bailiff. He is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Marin acted under the color of law.

10.     Defendant Sergeant Don Manumaleuna (hereafter "Manumaleuna") is a Deputy Sheriff holding the rank of Sergeant. He is assigned to the Los Angeles County Metropolitan Court and is responsible for the supervision of both inmates and his deputies. He is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Manumaleuna acted under the color of law.

11.     Defendant Michael Kassabian (hereafter "Kassabian") is a Deputy Sheriff holding the rank of corporal. He is in charge of classification, placement, and grievances of LGBT inmates in the Los Angeles County Jail. He is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Kassabian acted under the color of law.

12.     Defendant Nancy Aleman (hereafter "Aleman") is a Deputy Sheriff holding the rank of senior deputy. She is sued in her individual capacity for damages. At all times relevant, as a County official, Defendant Aleman acted under the color of law.

13.     Defendant Gerald Denson (hereafter "Denson") is a Deputy Sheriff holding the rank of corporal. He is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Denson acted under the color of law.

14.     Defendant Steven Kale (hereafter "Kale") is a Deputy Sheriff. He is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Denson acted under the color of law.

15.     Defendant R. Alvarez (hereafter "Alvarez") is a Deputy Sheriff. He is sued in his individual capacity for damages. At all times relevant, as a County official, Defendant Denson acted under the color of law.

16.     All Defendants' discriminatory conduct was intentional, and/or was done with reckless disregard for, and/or deliberate indifference toward, Plaintiffs' rights.

17.     Plaintiff is informed and believes and thereon alleges that Defendants sued herein as DOES 1 through 10, inclusive, are other employees of the Los Angeles County Sheriff's Department and were at all relevant times acting in the course and scope of their employment and agency. Each Defendant is the agent of the other. Plaintiff alleges that each of the Defendants named as "DOE" was in

3

some manner responsible for the acts and omissions alleged herein, and Plaintiff will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained

18.     Plaintiff is informed and believes, and thereupon alleges that, at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of their respective employers (Defendant County) and were acting at all times within the scope of their agency and said employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

19.     On or about May 4th, 2015, Plaintiff filed a claim with the County of Los Angeles pursuant to California Government Code § 910, which was rejected on June 18, 2015. Thus, all state law claims are timely filed.

## INTRODUCTION AND GENERAL ALLEGATIONS

20.     This action is brought under Title U.S.C. § 1983 and on the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and pursuant to the general law of the United States and of the State of California. Plaintiff also alleges that the conduct of each Defendant deprived Plaintiff of his constitutional right to due process under the law, and caused Plaintiff to suffer grievous pain, suffering, anxiety, depression, harm and injury based on the excessive force applied against him and the discriminatory actions of the Los Angeles County Sherri's Department.

21.     Each of the Defendants and Doe Defendants caused and is responsible for the unlawful conduct and resulting injury by, *inter alia*, personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing in or failing to take action to prevent the unlawful conduct by intervention, or promulgating policies and procedures or practices pursuant to which the unlawful conduct occurred; by failing and refusing to initiate and

4

maintain adequate training, supervision, policies, procedures and protocols; by failing to implement and ensure compliance with policies and procedures to ensure the safety and reasonable security of individuals, such as Plaintiff; and by ratifying the unlawful conduct performed by agents, employees, counselors, staff and officers under their direction and control.

22.     Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference will also be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

**FACTUAL ALLEGATIONS**

**A.     BACKGROUND**

23.     The Los Angeles County Jails and Court lock-ups (hereafter "Jails") are run by the LACSD.  The jails and lockups in the Jails and Superior Courts maintains separate areas of housing Gay, Bi-Sexual and Transgender (hereinafter "GBT") inmates, who are referred to as "K6G" inmates. When taken to Court, they are housed separately in lock-ups awaiting their court appearances for their own protection. Plaintiff, who is gay, was designated a K6G inmate. Plaintiff was also classified as an "ADA," American with Disabilities Act inmate because he had a back surgery in January 2014, was still suffering the effects of his back injury and the surgery, and documents were sent by his medical doctor to the MCJ documenting his disability and need for accommodations due to his back injury. The LACSD was on notice and well aware of his disability, and he was wearing a back brace at the time of the incident on March 4, 2015. The defendants were well aware of designation and saw him wearing a back brace.

24.     In the Metro traffic courthouse, "K6G" inmates are treated far worse than that of general population. At the time Plaintiff was taken to Court in 2015, Plaintiff was housed, like other GBT inmates, in a small room with one stool the size of a mop closet, awaiting his court appearance. The room was formerly an

attorney-client meeting room with only one stool, and was converted for use by the LACSD for GBT inmates at the time of the incident.  Plaintiff is informed and believes, that in some of the court lock-ups in the Los Angeles County Superior Courts, "K6G" inmates are kept, instead of cells, in "utility rooms" or "mop closets" that are separate from the holding cells that are designed to accommodate non-GBT inmates awaiting court appearances.[1] The holding tanks for non-GBT inmates awaiting court have toilets, TVs, phones, newspapers and are larger than the GBT holding tanks, while the mop closet at the Metro Court has none of these amenities. There is no reason for housing K6G inmates in non-cell facilities, as opposed to having a segregated cell or holding tank where they can be housed awaiting court. Among other things, "K6G" inmates endure substantially worse conditions of confinement simply because they are a "GBT" persons and members of the gay community, or are transgender and have a different sexual identity. The conditions and treatment the "K6G" inmates are subjected to in the Court lock-ups should not be tolerated.  GBT inmates are being discriminated against intentionally based on their status as a result of this custody arrangement.  Although the County and LASD owe a duty to protect GBT inmates from harm by providing protection, that does not allow GBT persons to be subjected to worse conditions of incarceration.

25.    Anytime a GBT inmate is transferred by the LASD to the Superior Courts to make a standard court appearance, it is a pattern and practice to subject GBT inmates to be housed in worse conditions than non-GBT inmates, which by all accounts Plaintiff is informed and believes is ongoing and wide spread throughout the County of Los Angeles. It was these conditions of confinement, of which Plaintiff complained of, that led to his beating, excessive force and retaliation by

---

[1] The Central Criminal Courts building lock-up also segregates GBT inmates, but Plaintiff is informed and believes that they have functionally equivalent holding tank to that of the non-GBT inmates.

defendants.

**B.    INCIDENT ALLEGATIONS**

26.    On March 27, 2014, Plaintiff was arrested for a crime he did not commit. The charges were later completely dismissed on April 8, 2015.While incarcerated, Plaintiff was held in custody by the Los Angeles County Sheriff's Department, who had a duty to ensure his safety. The LACSD housed GBT inmates in the K6G unit, including Plaintiff, who was gay. While in custody, a bench warrant appeared that required Plaintiff to appear in the Metro Court to take care of the warrant. During this time, he was also a designated ADA inmate, and wearing a back brace because he was still recovering from his back surgery. He appeared several times on the warrant, and, while at court, was kept in the functional equivalent of what inmates and deputies alike called the "utility" and "mop" closet in conditions far inferior to that of non-GBT inmates awaiting to appear in Court.

27.    On March 4, 2015, the date of the incident for which Plaintiff brings this action, Plaintiff was in the custody of the LACSD, and was transported by way of a LACSD inmate bus. Once Plaintiff was inside the sally port where the inmate bus drops off the inmates, Plaintiff was instructed by Defendant Denson to turn over his legal documents, books, and other legal belongings. Plaintiff informed deputy Defendant Denson that Plaintiff was in pro per and permitted to keep his legal materials, but Defendant Denson took the Plaintiff's property and refused to give it back to Plaintiff for his Court appearance. Plaintiff then complained, but his complaints went unheeded. Plaintiff never got his legal materials returned to him.

28.    Once Plaintiff entered the Courthouse on March 4, 2015, Defendant Aleman scanned Plaintiff's wristband to show that Plaintiff was present at the Court. Soon thereafter, Plaintiff, along with two other GBT inmates were informed that they would be placed in the mop or utility closet. The utility or mop closet is the size of a small bathroom, and with only one stool to sit on. This mop closet is

actually a retired attorney client interview room. This room has no bathroom, no running water, no toilet, or telephone. When not occupied by GBT inmates, cleaning supplies are kept in the closet, which leaves a strong, foul odor, compounded by strong odors of human waste since there is no toilet. Non-GBT inmates attending Court are provided with a toilet, toilet paper, telephone, a bench for several inmates to sit down on, and drinking water. If there is more than one GBT inmate, the LACSD, as a matter of custom and practice, forces all the inmates into this small room. Most of the time, this utility or mop closet is not cleaned, contains trash, and smells of human waste since there are no toilet facilities.

29.     On March 4, 2015, from the minute Plaintiff was placed in the mop or utility closet, housed with two other GBT inmates, he complained to several deputies that there was not enough room inside this small room.  He needed to sit down because of his back injury, but there was only one stool already occupied.  He asked for a chair for himself.  The LASCD deputies, Defendants Aleman, Denson, Marin, and their supervisor, Defendant Manumaleuna, ignored Plaintiff's complaints. Defendant Marin made numerous sexual comments, calling Plaintiff "pussycat." Deputies are at all times aware which inmates are GBT inmates based on the color of the jumpsuits that gay inmates are provided. Once an inmate is identified as a GBT inmate, LACSD requires that inmates at LACJ wear light blue jumpsuits and are kept separate from general population. On March 4, 2015, Plaintiff was wearing a light blue jumpsuit, and therefore all LACSD deputies on duty that day knew, and had reason to know, that the Plaintiff was a GBT inmate based on the jumpsuit.  He was also patted down prior to entering the Metro Court, so the deputies were aware of his back brace.

30.     Once the deputies placed Plaintiff inside the small mop room, Plaintiff had no place to sit down on as the only stool was occupied by another GBT inmate, along with another GBT inmate. Thereafter, Plaintiff continued knocking on the

door to request that he (who the deputies knew or should have known was wearing a back brace, and who was designated ADA) be provided a chair on which to sit down due to his back pain.

31.    After Plaintiff was knocking on the cell door for over 30 minutes, in the early morning hours after first arriving in Court, Defendant Marin, with Defendants Aleman and Denson standing next to them, allowed Plaintiff to use the bathroom.  Unlike non-GBT inmates who had a bathroom in their cell, GBT inmates had to ask for permission to use the bathroom since the mop closest did not have a toilet. Plaintiff walked 10 to 15 feet away, used the bathroom, and on the way back, Plaintiff stopped, with his hands in his pocket, and informed Defendant Marin that he had serious medical conditions, needed a chair to sit down on, and specifically told him words to the effect that he needed his ADA Accommodations. Defendant Marin reached over to Plaintiff, who was less than two feet away, grabbed Plaintiff by his corner of his shirt, collar, stating, words to the effect that, get in the cell "you fucking faggot." Defendant Marin lifted Plaintiff off the ground, slammed him against the wall, and continued to shove Plaintiff as he slid off the wall and back into the cell. Defendants Aleman and Denson observed the entire assault, doing nothing, and they slammed the closet door with Plaintiff inside the room, screaming and writhing in pain. Defendant Marin used excessive force, despite the fact Plaintiff cooperated and provided no resistance.

32.    Immediately after Plaintiff was assaulted by Defendant Marin, Plaintiff felt a crack and pop in his back. Thereafter, Plaintiff was in extreme pain and remained in pain for hours. After he felt the pain, Plaintiff began knocking on the door and yelling for the deputies to provide him with medical treatment, but his requests went unheeded. Defendants could hear Plaintiff as they were at a desk right outside a door, four feet away.

33.    Defendant Marin used excessive force, including bodily injury to

arrest and/or detain Plaintiff while he was in custody, and forcibly placing Plaintiff in the mop room. Defendant Marin knew or should have known that Plaintiff sustained serious injury, as Plaintiff cried out in pain and as a result of his excessive force.  A reasonable law enforcement officer would not have used said excessive force that resulted in Plaintiff sustaining injury since Plaintiff posed no real, immediate or significant threat of death or serious bodily injury to the Defendant Marin, any other LACSD personnel, or the public.

34.    Thereafter, Plaintiff asked that a supervisor come to see Plaintiff, but Defendants did not respond. At no time did the Plaintiff pose a threat to any LACSD personnel. Plaintiff was non-combative and was simply asking for a chair. Based on his comments, Defendant Marin displayed discriminatory animus towards GBT persons and Plaintiff. Further, during the incident, Defendants Denson and Aleman, who witnessed the assault, did nothing to intervene, and facilitated it by slamming the door on Plaintiff. Defendants Denson, Aleman and Marin covered up and concealed the assault.

35.    Immediately after the incident, Defendant Denson stated to defendant Marin that Plaintiff was requesting a supervisor on scene, but Defendant Marin stated words to the effect:  "fuck him dumb ass." In addition, Defendant Denson informed Defendant Marin, words to the effect that Marin should get the videotape and destroy it before a supervisor sees it.

36.    At all times relevant, the incident involving Plaintiff and Defendants was captured on video tape by the Superior Court security cameras placed in lock-up. Plaintiff learned that Deputy Lieutenant Robin Limon has possession of the videotape of the incident, and he sent a spoliation letter sent to LACSD Court Services Bureau Metro Division requesting that the videotape be preserved. Deputy Limon indicated to Plaintiff that she was in possession of a videotape of the incident, and Plaintiff has requested a copy of the videotape on several occasions

but has been refused by Deputy Limon. Deputy Limon indicated that the videotape would be preserved for litigation purposes.

37.     At mid-morning, several hours after the incident, Plaintiff, despite constant complaints seeking medical attention due to his extreme pain, was ignored by Defendants Denson, Aleman and Marin. Plaintiff was not immediately provided with any medical treatment, and not transported to a nearby hospital to ensure Plaintiff did not sustain any serious injury as required by law. At all times immediately after the incident on that day, Plaintiff demanded that Defendants Marin, Denson and Aleman provide medical attention, but they failed to do so.

38.     Later that morning, Plaintiff was escorted to Department 68 in the Metro Court for his court appearance. Plaintiff was escorted to court by Defendant Kale. When Defendant Kale came to get Plaintiff, while in the mop closet, Plaintiff informed Kale that Plaintiff was brutally assaulted, requested medical treatment, and asked Deputy Kale to contact a supervisor. Defendant Kale informed Plaintiff that no medical treatment would be provided to Plaintiff, but would call a supervisor. Minutes after Plaintiff's request for a supervisor, Defendant Manumaleuna arrived, and escorted Plaintiff to the Sixth Floor with another deputy. Defendant Manumaleuna took the chains off Plaintiff, and handcuffed him behind his back. Defendant Manumaleuna took Plaintiff into a corner. While holding a can of pepper spray in his hand, and with an accompanying deputy holding a taser, Defendant Manumaleuna began asking Plaintiff questions about the incident. Plaintiff informed Defendant Manumaleuna exactly what happened, and Defendant Manumaleuna replied with words to the effect that, "You don't want to file a complaint do you?" Plaintiff replied that he did want to file a complaint. Defendant Manumaleuna then informed Plaintiff that he would retrieve the video camera. Defendant Manumaleuna arrived with the video camera and prior to recording, informed Plaintiff not to say anything, stating words to the effect that he should not

say anything that "would warrant a federal probe." Defendant Manumaleuna instructed Plaintiff what to say, and to say that Plaintiff was fine. When Plaintiff , Defendant Manumaleuna  then informed Plaintiff words to the effect that he had once worked at the LACSD Compton Station, and that Plaintiff would be shown, in words to the effect, "how us dogs do things from the hood" if anything negative was said by Plaintiff  during the interview.   Said conduct threatened retaliation for exercise of Plaintiff's first amendment rights, and was violation of his rights to report the excessive force.

      39.    Plaintiff, due to fear of retaliation and under coercion, then did say words to the effect, even though not true, that he was fine, and that he did not wish to say anything. Defendant Manumaleuna asked Plaintiff questions with two other deputies present, including Defendant Kale. Plaintiff informed Defendant Manumaleuna of his recent orthopedic surgery and injuries, but Defendant Manumaleuna said "that doesn't matter." Once the interview was over, Defendant Manumaleuna informed PLAINTIFF that he would call an ambulance after Plaintiff's Court appearance. Further, Defendant Manumaleuna, in the presence of Defendant Kale and a third deputy, instructed Plaintiff not to inform the judge what happened or no medical treatment would be provided, thereby interfering with his rights to medical care, covering up the assault, and retaliating in Plaintiff's exercise of his First Amendment rights. Plaintiff told Defendant Manumaleuna that he was going to tell the commissioner what happened. To ensure that Plaintiff would not speak to the judge with respect to the incident, Defendant Manumaleuna informed Plaintiff that he would be standing right next to Plaintiff in the court room. Using threats, coercion, and other means to keep Plaintiff from exercising his rights, Defendant Manumaleuna, in the presence of Defendant Kale, and a second deputy, followed Plaintiff inside the courtroom. While in the Courtroom, Plaintiff tried to tell the commissioner what happened, and Defendant Manumaleuna indicated to the

Court, interrupting Plaintiff, that he was taking care of it. After the court appearance and during transport back to the mop room, Defendant Manumaleuna indicated that Plaintiff that he "did just fine," and that he would be taken to the hospital right away in an ambulance.

40.     Once downstairs, back in the holding cell area inside the Metro Court, Plaintiff asked Defendant Manumaleuna to prevent Defendant Marin from having any contact with Plaintiff , but Defendant Manumaleuna refused and even walked Plaintiff past Defendant Marin sitting at the desk.  Defendant Marin was informed by Defendant Manumaleuna that Plaintiff gave a statement on video camera concerning the incident, and Defendant Marin stated words to the effect that, if he calls anyone then we will say it was all policy. Plaintiff then informed Defendant Marin that Plaintiff would be contacting LACSD internal affairs regarding the incident. Plaintiff was then placed back in the mop room for approximately another two hours before Plaintiff was provided with any medical treatment, contrary to what Defendant Manumaleuna had promised.

41.     Finally, approximately more than seven hours after the incident, Defendant Manumaleuna instructed Defendant Kale and another Defendant, R. Alvarez, to transport the Plaintiff to a hospital. Defendant Kale then took Plaintiff out of his cell, handcuffed him behind his back, knowing that Plaintiff had a serious injury, and placed Plaintiff in the back seat of an ill-equipped police car, refused to give Plaintiff his legal property, and along with Defendant R. Alvarez, transported Plaintiff in a black and white car, not an ambulance, to the hospital. Defendant Kale instructed Defendant Alvarez to go as fast as possible and to hit every pot hole. Knowing Plaintiff had extreme injuries, Defendants Kale and Alvarez drove in a manner that exacerbated his injuries, where they intentionally hit, it appeared to Plaintiff, every bump and pot hole in the road, providing a form of "ambulance" therapy.

42.    Once at the County U.S.C. Medical Hospital, Plaintiff underwent x-rays, and received medical treatment. Defendant Adams, who was in charge of the Metro Court, arrived on scene. Plaintiff informed Defendant Adams the truth that he had been assaulted, and defendant Adams recorded the interview. Defendant Adams went and obtained a video camera to take Plaintiff's statement. Thereafter, Plaintiff informed Defendant Adams what had occurred, and Defendant Adams was advised by Plaintiff that it was captured by Court security cameras. Plaintiff advised Defendant Adams that Defendant Marin and Defendant Manumaleuna were going to try and destroy the tape of the incident, based on what Defendant Denson had stated. Defendant Adams then informed Plaintiff that Defendant Marin was new to the Courts and likely lacked proper training to be one of his bailiffs. After the interview, Plaintiff was returned to Los Angeles County Jail ("LACJ").

43.    Once back at LACJ, Plaintiff telephoned Los Angeles County Sheriff's Department Internal Affairs Division, and spoke to a Sergeant Frank and Plaintiff requested to file an internal affairs complaint regarding the incident.  On information and belief, Sergeant Frank and LASD internal affairs Captain Donnie Mauldin have a policy, practice and custom of not taking reports and complaints. Sergeant Frank simply refused to take the complaint, contacted the LACJ staff and allowed jail deputies to handle the complaint by Plaintiff. Knowing that all calls from the LACJ are recorded, Plaintiff was instructed to go out to the jail hallway to speak with Defendant Deputy Michael Kassabian. Defendant Kassabian, who was informed about the call to internal affairs, and is the deputy liaison to the K6G inmates at LACJ, instructed Plaintiff not to file the complaint. He said that no deputy would assault Plaintiff and refused to accept Plaintiff's inmate grievance form. Instead,  Defendant Kassabian threatened the Plaintiff with administrative segregation, a form of confinement that should be reserved for discipline or inmates who needed to be segregated to protect other inmates, which did not apply to

14

Plaintiff.  Instead, the threat of administrative segregation was meant to punish Plaintiff for exercise of his First Amendment rights.  Defendant Kassabian took Plaintiff's grievance but tore it up in Plaintiff's presence.

44.     On April 8, 2015, the date Plaintiff was released from LACJ, he contacted Los Angeles County Sheriff's Department Commander Kevin Goran, Defendant Goran, who is in charge of the Court Services, refused to discipline Defendant Marin or Defendant Manumaleuna for their conduct.

45.     After Plaintiff was released from LACJ and thereafter went and sought medical treatment from his private doctor, Dr. Chadwick F. Smith, who had operated on his back previously in January 2014, prior to the time he had entered the jail.  Dr. Smith performed an MRI on Plaintiff.  He ultimately determined that Plaintiff had sustained damage to his T-6 and T-8 which will require surgery.   He also determined that his injury was the result of blunt force trauma, such as being slammed against a wall.  He has opined that it was reasonable to conclude that it occurred as a result of the assault on March 4, 2015, and the subsequent drive to the hospital, as Plaintiff had not experienced at this time any other incident where he was slammed against a wall with such blunt force trauma.  Plaintiff has not been able to afford surgery, and in the meantime is in great pain and suffering, with limited mobility. Plaintiff had previously injured his back in a fall, which had cause injuries to T-6 and T-8,  but the assault caused him to re-fracture the T-6 and T-8.

46.     As a direct and proximate result of Defendants' actions, Plaintiff suffered extreme emotional distress, permanent injuries, including injuries to his back which will require surgery. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, which have caused Plaintiff  to sustain damages in a sum to be determined at trial.

C.     **MONELL ALLEGATIONS**

47.    This case involves the Plaintiff and the deplorable and ongoing acts committed by the deputies employed by the LACSD who beat and then assaulted the Plaintiff while attending the March 4, 2015 court hearing. The LACSD, by and through its Sheriff, have a pattern and practice of brutally beating and physically abusing inmates in general, and known GBT inmates in particular, and treating GBT inmates in a discriminatory manner inferior to that of non-GBT inmates while in detention at the Courts in the Los Angeles County Superior Courts, as well as the Los Angeles County Jails. By and through this pattern and practice, the LASD subjects GBT people to worse conditions based on sexual orientation and identity when being detained in Court lock ups, including using excessive force, and housing them in substandard facilities when in Court lock ups. Such treatment violates Plaintiff's and GBT inmates equal protection rights under the law.

48.    Pursuant to a consent decree issued in *Dennis Rutherford v. Baca, et al.*, CV 75-4111-DDP, the ACLU of Southern California prepares an annual report regarding conditions at Los Angeles County's Men's Central Jail. In relation to the a report, "Cruel and Unusual Punishment, How a Savage Gang of Deputies Controls LA County Jails," the ACLU has disclosed multiple declarations revealing systemic acts of excessive force and fabrication of evidence by sheriff's deputies at Men's Central Jail committed by LACSD deputies. Further, the Report cited to the statements of multiple civilians who witnessed the unconstitutional, sadistic abuse of inmates by Sheriff's deputies, while also witnessing the deputies falsely make statements to the victim inmates of "stop resisting," to cover-up their brutal conduct.

49.    Beginning on September 25, 2011 the *Los Angeles Times* printed a series of articles reporting on "allegations of deputy brutality and other misconduct in the Los Angeles County jail system." *Jails Under Scrutiny Series*, L.A. Times, Sept. 25, 2011-Dece. 25, 2011, available at http://www.latimes.com/news/local/la-

me-jails-sg,0,4834651.storygallery. The series provides information regarding, *inter alia:* the widespread use of excessive force by deputies at the Men's Central Jail (MCJ); memos detaining the excessive force problem at MCJ; an FBI investigation of deputy force at MCJ; and deputy gangs or cliques within MCJ.

50.     Several articles focus, in particular, on the longstanding nature of the problem of excessive force at MCJ and what the department has done – or not done – in response. Two such articles are: (1) Robert Fetaruechi & Jack Leonard, *Sheriff Lee Baca Was Warned About Jail Deputies' Conduct, Retiree Says,* L.A. Times, December 1, 2011 ("Baca Warned"); (2) Jack Leonard & Robert Fetaruechi, *Sheriff's Staff Raised Red Flags About Jail Brutality 2 Years Ago,* L.A. Times, October 29, 2011 ("*Red Flags").*

51.     The Citizens' Commission on Jail Violence ("CCJV Report") was issued in September 2012 as a result of the excessive deputy violence in the Los Angeles County Jails. The CCJV was appointed by the Los Angeles County Board of Supervisors "to conduct a review of the nature, depth and cause of the problem of inappropriate deputy use of force in the jails, and to recommend corrective action as necessary." (CCJV Report at Letter.) The CCJV investigation reviewed data and information that covered a number of years, including the period before, during, and after the extractions on August 25, 2008, and issued findings regarding the nature, scope, and causes of the excessive force problem in the County jails. The report identifies a "*persistent pattern of unreasonable force in the Los Angeles County jails that dates back many years*" and states that the "problem of excessive and unnecessary force in the Los Angeles County jails was the result of many factors, beginning *most fundamentally with a failure of leadership in the Department*." (*Id.* at 1, 3.) The report also describes the "culture" in the jails that was fostered by supervisors whereby "deputies believe[d] they must use force to show inmates who 'is running the jails.'" (*Id.* at 4-5.)

52.     Prior to and during the time of the assault of Plaintiff, supervisors of the Los Angeles County Sheriff's Department were aware of the existence of the brutal, unconstitutional practices of LACSD deputies in the treatment of in-custody inmates within the Men's Central Jail and other detention facilities, including Court lock-ups. Defendant County of Los Angeles had a duty to adequately train, supervise and control its officers to prevent the deputies from committing acts of excessive force against individuals within their detention facilities.   Supervisors were also aware of the discriminatory treatment of GBT inmates in how they are housed in the Court lock ups including the Metro Court facility.

53.     Defendant County of Los Angeles had a duty to monitor and supervise the deputies within the LACSD facilities, and to intervene and thereby prevent the acts of excessive force and fabrication of evidence.

54.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants County of Los Angeles, and Defendant McDonnell as the final policy maker for the LACSD, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions alleged in this complaint, described in antecedent and subsequent paragraphs of the Complaint,  which consists of the following customs and policies:

a.  Subjecting citizens, including Plaintiff, to unreasonable uses of force against their persons;

b.  Selecting, retaining and assigning deputies with demonstrable propensities for excessive force, violence and other misconduct;

c.  Failing to adequately train, supervise and control deputies in the field of law enforcement, including the use of force;

d.  Failing to properly screen and hire deputies;

e.  Failing to adequately discipline deputies involved in misconduct,

18

including excessive force and dishonesty;

f.   Condoning and encouraging offices in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

g.   Condoning and encouraging the fabrication of evidence including but not limited to materially false reports; and,

h.   Retaliating against persons such as Plaintiff exercising their First Amendment rights.

55.     In addition to the pattern of excessive force against detainees, Plaintiff is informed and believes and thereon alleges that the LACSD engages in a well-established pattern and practice of discriminatory treatment against GBT inmates. The County of Los Angeles and also its final policy maker Sheriff Jim McDonnell, ("McDonnell"), as well as Defendant Adams, the deputy in charge of the Metro Court LACSD facility, as well as Defendant Goren, who was in charge of the LACSD court operations and court facilities, acted with complete reckless deliberate indifference and complete reckless disregard for the safety, security, and constitutional and statutory rights of the Plaintiff and all other persons similarly situated, maintained, enforced, tolerated, permitted, and applied policies, practices, or customs of treating GBT people much different than any other inmates in violation of their equal protection rights under the law, among other things:

a.     Subjecting gay inmates to violations of their Constitutional rights to be free from cruel and unusual punishment, and excessive force;

b.     Selecting, retaining, and assigning deputies and officers with actual and demonstrable propensities for excessive force, violence, deliberate indifference to the health and safety of the detainees and inmates, dishonestly, and other misconduct;

c.   Failing to adequately train, supervise, and control deputies and officers in non-discriminatory practices against GBT inmates;

d.   Failing to properly screen and hire deputies who would respect the rights of GBT inmates;

e.   Failing to adequately discipline deputies and officers involved in misconduct against GBT inmates;

f.   Allowing unequal, and discriminatory conditions of confinement, in County Court lock ups, including the Metro Court GBT mop closet, that subject GBT to worse conditions of confinement compared to non-GBT inmates, in violation of GBT inmates rights to equal protection under the law;

g.   Allowing deputies and officers to cause actual harm upon GBT inmates and subject them to violence;

h.   Allowing deputies and officers to place GBT inmates in County lock ups that have no running water, a toilet, drink water, floor with human waste, and no benches or chairs to sit down on;

i.   Not providing accommodations to GBT inmates who have serious medical conditions that are within the American with Disabilities Act; and,

j.   Condoning and encouraging deputies and officers in the belief that they can violate the rights of GBT persons such as the Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for their promotion and other employment benefits;

56.   The actions and inactions of the LACSD set forth above were known and should have been known to the policy makers responsible for the Los Angeles County Sheriff's Department and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and, the strong likelihood that constitutional rights, including the right to be free from excessive force, to exercise one's First Amendment rights without fear of retaliation, the right to medical care

and to have one's disability accommodated without fear of retaliation or excessive force, and to be free of discriminatory treatment and the right to equal protection under the laws without fear of retaliation and excessive force, would occur as a result of the County of Los Angeles' policies, practices and customs

## FIRST CAUSE OF ACTION

**Violation of Federal Civil Rights – 42 U.S.C. § 1983 – excessive force, equal protection violations against GBT inmates, retaliation against exercise of First Amendment rights, right to constitutionally protected medical care -- Against Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez, Kassabian and DOES 1-10**

57.     The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

58.     Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez, Kassabian, and each of them, acting under the color of state law, deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States including the Fourth, Fifth, Eighth and First, Fourth, Eighth and Fourteenth Amendments by:

A. Subjecting Plaintiff to excessive force and unjustified infliction of harm;

B.     Interfering with Plaintiff's rights to seek redress for his injuries by covering up their officer misconduct in retaliation of his First Amendment rights;

C.     Denying him his constitutional right to adequate medical care;

D.     Discriminating against Plaintiff as a member of the GBT community to equal protection of the laws in provision of facilitates and in engaging in excessive force; and/or,

E.     Failing to accommodate his disability as required by the American with Disabilities Act.

59.     As a direct and proximate result of the aforementioned acts of

21

Defendants, Plaintiff was injured as set forth above, and is entitled to compensatory and punitive damages according to proof.

### SECOND CAUSE OF ACTION
**Failure to Properly Screen and Hire – 42 U.S.C. § 1983 – Against COUNTY, MCDONNELL and DOES 1-10**

60.    The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

61.    Defendant County of Los Angeles and Defendant McDonnell, and Does 1- 10, as a matter of custom, practice and policy, failed to adequately and properly screen and hire the Defendant employee deputies.

62.    Due to the acts of the Defendants, the failure to properly screen and hire officers and deputies and the continued employment of the Defendant deputies, created a clear and present danger to the residents and inmates of the County of Los Angeles.

63.    Furthermore, the lack of adequate screening and hiring practices by the Defendants evidence a deliberate indifference to the rights of the Plaintiff and others in his position.

64.    Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect inmates, and the public from official misconduct.

65.    The conduct alleged herein violated the Plaintiff's rights as alleged above which have legally, proximately, foreseeably and actually caused the said Plaintiff to suffer general and special damages according to proof at the time of trial.

66.    Plaintiff is entitled to recover reasonable attorney fees under 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION
**Violation of federal civil rights - - 42 U.S.C. § 1983 for failure to supervise, train and take corrective measures causing constitutional violations against Defendants Manumaleuna, Adams, Goran, McDonnell and Does 1-10**

22

67.    The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

68.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants County of Los Angeles, McDonnell, Adam, Goran and Manumaleuna, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions alleged herein, and failed to supervise, train, discipline and take corrective actions against the Defendants who violated Plaintiff's rights in the following manner:

A.  Subjecting citizens, including Plaintiff, to excessive force and unjustified infliction of harm;

B.  Selecting and assigning deputies entrusted with the care of inmates, with demonstrable propensities for excessive force, violence, lack of respect of equal rights of GBT inmates and the accommodation of inmates with disabilities, and other misconduct;

C.  Failing to adequately train, supervise and control deputies in the field of law enforcement, including the use of force, conducting themselves honestly and without interfering in inmates' rights, retaliating against inmates First Amendment rights, respecting the equal rights of GBT inmates and accommodating inmates with disabilities, and providing constitutionally mandated medical care to inmates ;

D.  Failing to adequately discipline deputies involved in misconduct, including excessive force, dishonesty, interference with inmates constitutionally protected rights, rights to equal protection and accommodation of disabilities, and rights to adequate medical care;

E.  Condoning and encouraging officers in the belief that they can violate the rights of GBT persons such as Plaintiff with impunity, and that such

conduct not adversely affect their opportunities for promotion and other

employment benefits;

**F.**  Failing to train, supervise and ensure that deputies and LACSD personnel

ensure that GBT inmates such as Plaintiff are housed in facilities equal to

those of non-GBT inmates, such as the Metro Court lock-up can

accommodate GBT inmates with facilities equal to non-GBT inmates;

and,

**G.**  Failing to train, supervise and ensure that deputies and LACSD personnel

ensure that the needs of disabled inmates, such as in accommodation in

court facilities such as the Metro Court lock-up, comply with the ADA.

## FOURTH CAUSE OF ACTION
**Violation of Civil Rights – 42 U.S.C. § 1983 -Deliberate Indifference to
Medical Needs against Defendants Marin, Aleman, Denson, Kale
Manumaleuna, R. Alvarez and DOES 1-10**

69.    The allegations contained in all antecedent and subsequent paragraphs
are incorporated by reference.

70.    As alleged herein and above, Defendants Marin, Aleman, Denson,
Kale, Manumaleuna, R. Alvarez, and Does 1-10, acting under the color of state law
in their individual and personal capacities, deprived Plaintiff of his rights,
privileges and immunities secured by the Fourteenth Amendment right to due
process and against cruel and unusual punishment under the United Sates
Constitution. They did so by subjecting him through actions constituting excessive
force, cover-up, denial of medical care, and transport to the hospital in a manner to
exacerbate his injuries, that violated his right against cruel and unusual punishment
under the United States Constitution by their deliberate indifference to his medical
needs and care, subjecting him to a delay and denial of necessary medical care and
exacerbation of his injuries.

71. This denial of medical treatment, and also transporting an inmate to a

hospital constitutes Deliberate Indifference as set forth in Estelle v. Gamble, 429 U.S. 97 (1976).

72.    The aforementioned acts of the Defendants were intentional and in complete disregard for the rights of the Plaintiff.  As a result, PLAINTIFF is entitled to an award of punitive damages, and damages according to proof as set forth herein.

## FIFTH CAUSE OF ACTION
**Violation of Title II- ADA, Rehabilitation Act and the California Unruh Act against Defendants McDonnell, Adams, Goren, Marin, Manumaleuna, Aleman, Denson, Kale, R. Alvarez, and County of Los Angeles**

73.    The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

74.    Plaintiff was a "qualified individual," with a physical disability recognized by the LACSD due to his pre-existing back injury. At the time of his assault, he was wearing a back brace of which defendants were aware. Plaintiff's disability limited his ability to care for himself and control his physical condition as defined under the ADA, 42 U.S.C. §12131, under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, 28 C.F.R. §540(1)(2), 28 C.F.R. §42.540(k) and Cal. Civ. Code §51, Cal. Gov't. Code §12926.1, and qualified as an individual with a physical disability under California law, and he met the essential eligibility requirements of County programs to provide access to medical services for its detainee patients in County jail while they are in custody.

75.    County's jail and mental health services are places of public accommodations and a covered entity for purposed of enforcement of the ADA, 42 U.S.C. § 12181(7)(F), the Rehabilitation Act, 29 U.S.C. § 794, 51 Cal.Civil Code and 12926 of the Cal. Govt. Code, and Cal. Civ. Code § 51 et seq, explicated by the regulations promulgated under each of these laws.

76.    County's jail 'engaged in the business of . . . . health care," custody of persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. §749(b), and State Human Rights Law, Cal.Civ. Code §51.

77.    Under the ADA, the County of Los Angeles is mandated to "develop an effective, integrated comprehensive system for the delivery of all services to person with . . . disabilities . . ." and to ensure "that the persona and civil rights" of person who are receiving services under its aegis are protected.

78.    Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

79.    The County of Los Angeles is managed under the ADA not to "discriminate against [any qualified individual] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182(a).

80.    42 U.S.C. §12182(b) (1)(A)(3) provides in pertinent part that "it shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good service, facility, privilege, advantage, or accommodation that is different or separate from that provides to others." (Emphasis added).

81.    The LACSD and Defendant County of Los Angeles, and all individual defendants named in the complaint except for Defendant Kassabian, violated the ADA and discriminated against Plaintiff by housing him in a lock up in the Metro Court that failed to accommodate his disability. He was denied the benefits of any reasonable accommodations, programs and activities that would accommodate his

severe back condition, and failed to provide the medical health programs and services which would have provided the treatment and continuity of care that he needed, and the facilities he needed to be housed in while appearing in Court that would have mitigated against his back injury. Instead of accommodating his disability, the Defendants discriminated against Plaintiff due to his injury. They retaliated against Plaintiff, and denied him the reasonable accommodations required by law when Plaintiff complained that his disability was not being reasonably accommodated by assaulting him, covering up the assault, failing to timely provide for medical care, and exacerbating his condition by intentionally transporting him in a manner to the hospital that would increase his back injuries and exacerbate his disability.

82.    As set forth herein, Defendant Adams was in charge of the Metro Court, which did not have facilities that would properly accommodate Plaintiff's disability, and in charge of the deputies in his facility who were required to ensure that individuals with disabilities are properly accommodated. Defendant Goran was in charge of Court Operations, part of court operations is to ensure that individuals with disabilities are reasonably accommodated. Defendant McDonnell, as sheriff of Los Angeles County, is ultimately responsible that deputies accommodate individuals with disabilities in his LACSD facilities. Defendants Marin, Manumaleuna, Aleman, Denson, Kale and R. Alvarez in their actions failed to accommodate Plaintiff's disability, and indeed, exacerbated his disability through their actions as alleged herein.

83.    Defendants Adams, Goran, McDonnell, Marin, Manumaleuna, Aleman, Denson, Kale and R. Alvarez and the County of Los Angeles, failed to comply with the ADA with respect to Plaintiff to ensure he disability was accommodated by failing to have proper facilities to house GBT inmates at the Metro Court with disabilities, by assaulting him when he attempted to exercise his

ADA rights, and failing to train, supervise and ensure deputies accommodated inmates with disabilities.

84.    As a direct and proximate result of the aforementioned acts of defendants, Plaintiff was injured as set forth above, and is entitled to compensatory and punitive damages according to proof.

## SIXTH CAUSE OF ACTION
### Violation of Bane Act – California Code of Civil Procedure § 52.1
### Against Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez, Kassabian, County of Los Angeles and DOES 1-10

85.    The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

86.    The County of Los Angeles is liable for the violations of its employees under California Government Code §815.2(a). Furthermore, the County of Los Angeles is liable under California Government Code § 815.6, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the California Constitution guarantee the right of person to be free from excessive force. Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez and Kassabian, and each of them, by engaging in the wrongful conduct alleged herein, interfered or attempted to interfere by threats, intimidation, or coercion with Plaintiff's exercise or enjoyment of these rights, thus giving rise to claims for damages pursuant to California Civil Code § 52.1(b).  The very exercise of excessive force in and of itself constitutes the coercion as required by the Bane Act.  In addition, the coercion element is met because defendants engaged in excessive force against a GBT inmate, with a disability they knew about, and where said inmate was forced to be in a discriminatory facility unequal to that of non-GBT inmates, and complained about it due to the discrimination and the failure to accommodate his disability, and the excessive force, interference with his First Amendment rights, and failure to provide constitutionally mandated medical care

all stemmed from Defendants failure to provide equal protection under the law due to Plaintiff's status in providing unequal housing, and assaulting him because they failed to accommodate his disability.

87. As a direct and proximate result of the aforementioned acts of these defendants, Plaintiff was injured as set forth above and is entitled to statutory damages under California Civil Code § 52, as well as compensatory and punitive damages according to proof.

**SEVENTH CAUSE OF ACTION**
**Assault and Battery - - Against Defendants Marin, Aleman, Denson, County of Los Angeles, and Does 1-10**

88.    The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

89.    The County of Los Angeles is liable for the violation of its employees under California Government Code Section 815.2(a). Furthermore, the County of Los Angeles is liable under California Government Code Section 815.6.

90.    Defendants Marin, Aleman and Denson, and Does 1 through 10, acting with the scope of their employment as law enforcement officers for the LACSD, assaulted and battered Plaintiff causing injury.

91.    As a direct and proximate result of the aforementioned acts of defendants, Plaintiff was injured as set forth above, and is entitled to compensatory and punitive damages according to proof.

**EIGHTH CAUSE OF ACTION**
**Intentional Infliction Of Emotional Distress**
**Against Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez, Kassabian, County of Los Angeles, and DOES 1-10**

92.    The allegations contained in all antecedent and subsequent paragraphs are incorporated by reference.

93.    The County of Los Angeles is liable for the violation of its employees under California Government Code Section 815.2(a). Furthermore, the County of

29

Los Angeles is liable under California Government Code Section 815.6.

94.    Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez, Kassabian and Does 1 through 10, acting with the scope of their employment as law enforcement officers for the LACSD, intentionally inflicted emotional distress on Plaintiff.

95.    Defendants inflicted intentional emotional distress by committing acts that were outrageous and violated his civil rights, including but not limited to, engaging in excessive force without reason; by failing to properly assess and treat his medical condition despite complaints, and knowing he was totally vulnerable, and dependent on them providing adequate medical treatment; interfering with his civil rights by failing to provide him as a GBT inmate, equal protection under the law; failing to accommodate his known disability; harassing him as a GBT inmate; unconstitutionally delaying proper medical treatment and conditioning it on his refraining from reporting their excessive force; and exacerbating his injuries and threatening him with worse conditions of confinement if he exercised his constitutional rights to complain about his treatment.

96.    As a direct and proximate result of the aforementioned acts of defendants, Plaintiff was injured as set forth above, suffered extreme emotional distress and the worsening of his injuries, and is entitled to compensatory and punitive damages according to proof.

## NINTH CAUSE OF ACTION
### Deprivation of Civil Rights – 42 U.S.C. § 1983 - *MONELL*
### Against Defendants McDonnell in his official capacity, County of Los Angeles, and DOES 1-10

97.    The allegations contained in all antecedent and subsequent paragraphs are hereby incorporated by reference, and specifically, the allegations establishing an unconstitutional custom, policy and practice, within the meaning of *Monell v. Department of Social Services of the COUNTY of New York*, 436 U.S. 658

(1978)("*Monell*"), as set forth in all relevant paragraphs of the Complaint.

98.     Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, Defendants County of Los Angeles, and Defendant McDonnell,[2] who was at the time of the incident the final policy maker for the LACSD, with deliberate indifference, an conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions specifically elaborated in the complaint, and the specific *Monell* violations discussed in ¶¶ 45-54 of the Complaint .

99. The actions and inactions of the Los Angeles County Sheriff's department set forth were known to the policy maker responsible for the LACSD, including Defendant McDonnell, and Does 1-10, and the County of Los Angeles and Defendant McDonnell, and Does 1-10, acted with deliberate indifference to either the recurring constitutional violations elaborated in ¶¶ 45-54 above, and/or to the strong likelihood that constitutional rights would be violated as a result of falling to training, supervise or discipline in areas where the need for such training and supervision was obvious, and failing to ensure that the constitutional needs and equal protection rights of GBT inmates in lock ups were protected, including providing equal facilities for GBT inmates and inmates with disabilities were accommodated as required by law.

100.    The actions of the County of Los Angeles, Defendant McDonnell and Does 1-10, as set forth herein, were a motivating force behind the violations of Plaintiff's constitutional rights as set forth in the complaint.  Specifically, their actions, and policies, customs and practices including, but not limited to, in hiring, training, discipline, provision of facilities, accommodation of disabilities, resulting in the use of excessive force, retaliation against the exercise of First Amendment

---

[2] Defendant McDonnell may have delegated his final policy authority with respect to the housing of GBT inmates at the Metro lock up to another individual, and if so, the Plaintiff reserves the right to name that person in this complaint.

rights, discrimination against GBT inmates in the provision of facilities in Court lock ups and in excessive force against GBT inmates, and discrimination in providing ADA accommodations, all were the moving force of the violations by the Defendants against Plaintiff.

101.   As a direct and proximate result of the aforementioned acts of Defendants, Plaintiff was injured as set forth above, and is entitled to compensatory damages according to proof.

## DAMAGES

102.   As a direct and proximate result of the aforesaid acts, practices, policies and decisions of Defendants Marin, Aleman, Denson, Kale, Manumaleuna, R. Alvarez, Adams, Kassabian, Goran and McDonnell, Defendant County of Los Angeles and Does 1-10, Plaintiff has suffered great mental and physical pain, physical injury, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum bot be determined at trail.

103.   All defendants acted without authorization of law, and, separately and in concert, the aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference with the intent to deprive Plaintiff of his rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

104.   By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to prosecute the within action, and to render legal assistance to Plaintiff that he might vindicate the loss and impairment of his rights, and be reason thereof, Plaintiff requests payment by Defendants of a responsible sum for attorneys' fees pursuant to 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Anthony Oliver prays for judgment against Defendants McDonnell, Goran, Adams, Manumaleuna, Kassabian, Kale, Marin, Aleman, R. Alvarez, County of Los Angeles, and Does 1-10, and each of them, jointly and severally as described in the Causes of Action set forth above as follows:

1. For general and compensatory damages according to proof;

2. For special damages according to proof;

3. For exemplary and punitive damages against individual Defendants in an amount according to proof;

4. In addition to actual damages, statutory damages as allowed by law, including statutory and treble damages under California Civil Code §§52 and 52.1;

5. Attorneys' fees and costs under 42 U.S.C. §1988; California Civil Code §§52(b)(3), 52.1(h); California Code of Civil Procedure §1021.5, and whatever other statute or law may be applicable;

6. For costs of suit pursuant to Fed.R.Civ.P. 54(d), 28 U.S.C. §1920 and Cal. Civ. Code §1032;

7. For any other relief as this Court deems just and proper.

Respectfully submitted,
KAYE, McLANE, BEDNARSKI & LITT, LLP

Dated: December 17, 2015        By: _/s/_ David S. McLane_____
David S. McLane
Attorneys for Plaintiff

## **JURY DEMAND**

Trial by jury of all issues is demanded.

Dated: December 17, 2015        By: __/s/ David S. McLane_____
David S. McLane
Attorneys for Plaintiff